Good morning, Your Honors. My name is Jim Lopes. Since I represent Ms. Earl, I'd like to reserve six minutes for rebuttal and address first the issue of the District Court's dismissal under the clearly established law prong for qualified immunity. I believe it is undisputed that the Acosta Rule was adopted by this Court a quarter of a century ago and that it has, as the Villanueva case noted, this Court has consistently adhered to that rule. The rule of law is that it is objectively unreasonable for an officer to use deadly force against the driver of a slow-moving car that the officer could avoid by simply stepping to the side. Counsel, it appears to me from our case law that there are at least three factors that our cases have considered. Those are the distance that the car is from the officer, the speed of the car, and whether it's accelerating. And the third thing is whether there is a clear pathway to leave. And there aren't any cases that are precisely exactly like this one. So why isn't the District Court right that the factual scenario is such that there wasn't a clear precedent that the officer should have relied upon? Well, I agree that those are three of the factors. I'm not sure that they're the only factors. I would point to the Court's en banc decision in Gonzales where the Court did zero in on three of those factors, speed, time, and distance. When you follow the rule for summary judgment, which is that all of the plaintiff's evidence must be accepted as true, then in this case, you have evidence that the speed of the car was between four and a top speed of six miles per hour at the time she was shot. But even plaintiff's expert counsel, I think, said that the officer was in the pathway of the car. Am I wrong about that? No, you're not wrong, Your Honor. And that was also true in Tubar. It was directly on point. The officer in Tubar claimed that he was in the path, and this Court affirmed the District Court, Judge Kunauer, in that case, saying it doesn't matter because, of course, someone can be in the path and yet easily step out of the path. Well, but you don't have to be under... Most of these scenarios take just seconds, and Monson is the case that I was on previously, which is fairly similar to this. It's not exactly on point, but you don't have to be an Olympic athlete to be able to do a back spring and get out of the line of the car. Basically, the arc of the vehicle is, you know, would put an objective standard that an objective officer would be in fear of his or her life. I agree. You don't have to be an Olympic athlete, Your Honor, and he wasn't. I mean, there's no evidence that he is, and the bottom line is a jury could easily conclude that a plain old ordinary person who's not an Olympic athlete could easily step aside and, in fact, did step aside in this case, which is also what happened in Tubar. So, you know, if there was no case law at all, and there's tons, really, if there's no case law at all, and never was, and an officer said, I was in the path, the car could be 13 feet away, the car could be a mile away, the car could be any distance away, and if the officer said, doesn't matter how easy it is for me to step aside, I'm allowed to shoot the driver of the car and kill him. But here, counsel, I think the distance was only five to ten feet. That's about, you know, my height to double my height or less. That's not very far, so the half a mile hypothetical doesn't seem particularly apt. That's what the officer said, five to ten feet. There's a number of diagrams that you have. You know, what you might do, Your Honor, is look at excerpts of record 1383 to 1388, which are the diagrams drawn not by the plaintiff's expert, but by the defendant's experts. That's where the defendant's expert places the officer for all eight shots. And for all, for none of them, is he standing in front of the car. For none of them. For all eight, he's on the side of the car. For four of them, he's basically right next to the driver's side window where Kenneth Wright is. And for the last one, he's, the car, he's shooting through the rear passenger window. All you have to ask yourself, I think all you're allowed to ask yourself is, could a jury find that it is objectively unreasonable for this officer to have shot and killed the driver when he could have, and in fact did, just take a few steps? He decided to take steps to the right side, passenger side of the car. He could have stopped and taken a step backwards and been on the left side of the car. He chose to keep walking. He had no problem getting out of the way. The evidence you have is that he was three to six, the evidence from the plaintiff, and from those diagrams really as well, is that he was three to six feet to the right of the car when he fired all of his shots. Counsel, may I ask what your perspective on Wilkinson Taurus is? It seems to me that's a difficult case for you, is it not? I don't think so, your honor. And I think it was, I pointed in my supplemental brief to the discussion in Villanueva about that case. And I think it was also discussed in the Ombak decision in Gonzalez. That's a case where it is clear that the driver of the car, first of all, knew that there were police trying to stop the car, which is not at all clear here. Second of all, it's a case where there was, I believe that's the case where there was a high-speed chase at about 100 miles an hour at one point. Third, it's a case where the fellow officer fell down and was on the ground and was out of view of the officer completely. And he thought he had already been run over by the car. And he thought that because he was on the ground, he doesn't have the ability quickly to step aside. It was reasonable to think he might, because he thought he'd already been hit, be stunned and injured and totally unable to step anywhere. So you have a difference in speed, a difference in the aggression of the driver. And I don't want to lose track of that point. In this case, a jury could easily find that Jackie Sawyers had absolutely no idea that either of these people were police officers and that she never even saw Officer Campbell. Mr. Wright and Ms. Sawyers were, according to the information the officers had, Mr. Wright was in the habit of sleeping in his car near the house at 3314 Sawyer Street. They got there, Mr. Wright wasn't sleeping. Officer Joseph and Campbell could see that he was bent over or something. But Ms. Sawyers at least acted as if she was asleep or at least dozing or had her eyes closed. So you said she didn't think they were police officers. Weren't they both in uniform and wasn't it a marked vehicle? It was a marked vehicle, I believe, Your Honor. That's undisputed, I think, isn't it? I mean, is there any question about that in the record? I don't think there's any question. It's undisputed that they're both in uniform and they're both in a marked vehicle. Your Honor, could I say a few things? First of all, it's almost midnight. It's pitch black. Second of all, there's something in the record that says it's marked, but it doesn't say how the vehicle was marked. Third, there's nothing in the record to indicate that the headlights of Ms. Sawyers' car was ever turned on. And this I'm not sure about, but as far as being in uniform, I believe the description of the shoulder patch which said, Tacoma Police. In the middle of the dark at night when your headlights are not on, and suddenly someone is, and you're asleep, and someone at your driver's window starts yelling, whether or not you do or don't hear, the one word that he says, he said, police. Maybe you did, maybe you didn't. Maybe you thought you were about to get robbed by somebody. And after your car creeps forward one foot, whoever this person is, by his own, and he's Officer Joseph, tries to smash the window of your car with his gun, did she, a jury could easily, easily, easily find. She had absolutely no idea that he was a police officer. And even if she knew that he was a police officer, if the jury wants to find that, the jury could easily find that she never saw Officer Campbell at all. Counsel, counsel, when the end up mattering whether she knew that they were police officers, if in fact they were police officers? I think it does, Your Honor, in the sense that it factors into. How would they know if she knew? If we're looking. How would they know that she didn't know? I mean, the officer. The question is, if, if the question is whether the police acted in an objectively reasonable fashion, their ability to read her mind seems irrelevant. Well, let me say this, Your Honor. Both officers said they have no idea which way she was looking. And they don't know what she was doing, except for Officer Joseph saying she put the car in gear and went forward a foot. She didn't speak to Officer Joseph. She didn't, her eyes didn't register. She didn't look at and you don't know that this person is not looking at you and it's dark. One thing that factors into your reasonableness is maybe she doesn't even know. He was not, he was upset that his co-officer rushed up to the car. He didn't think that was a wise idea at all. But that's the situation he was in. I will take the rest of my time, which is dwindling, for rebuttal if I may. You may do that. Good morning, Your Honors. Jane Holman on behalf of Officer Campbell and the City of Tacoma. As the court has correctly noted, this incident happened in mere seconds. Officer Campbell was a distance of five to 10 feet from the front bumper of the vehicle at an angle of 45 degrees when Jacqueline Sawyers put the car into drive and began to accelerate. Counsel, the concern that I have is the following. If we take all the facts in favor of the plaintiff as we are required to do, it would appear that the officer did have a pathway to back off and the acceleration, such as it was, went from 4.5 or 5.5 to perhaps as much as six miles an hour. This was not like Wilkinson, where the engine was revving in the mud so that it could pop out at a high speed. This is very, very, very slow. The theoretical question I have is this. When one version of the fact would make the officer's acts permissible and the other version would not, what do we do in terms of qualified immunity and determining objective reasonableness? Your Honor, the first step of the qualified immunity analysis is whether or not the plaintiff has made out a constitutional deprivation. My question to you is, if we take the plaintiff's facts, the plaintiff has done so. I want you to take that as a given in this hypothetical. If it is a factual question of that sort, what are we supposed to do? The court takes the facts in the light most favorable to the plaintiff, which means that the court adopts the plaintiff's version of the disputed facts. But here are the facts that aren't in dispute. Mr. Newberry, who is a plaintiff's accident reconstructionist, indicated that the fatal shot was fired approximately three seconds after the car started to move. Mr. Newberry indicated that the car was accelerating slowly, but what Mr. Newberry did not address and what stands uncontroverted in the record and what makes this case more like Wilkinson than plaintiffs would like to admit is that when the car began to accelerate it, it spun the back wheels. It was accelerating hard enough to break the traction on the back wheels, which makes this case far more like Wilkinson. And Officer Joseph testified that it moved just slightly and then began to accelerate. At this point, Officer Campbell is walking towards the suspect vehicle. The evidence with respect to the acceleration of the vehicle and the fact that it was under hard enough acceleration to break traction on the back tires can be found in the record at 1409, wherein Mr. Hunter documents what the forensic technicians found at the accident. Excuse me, 1428, the photograph of the gravel area, which shows the tire tracks is at 1546. So putting this into context, the undisputed facts are Officer Campbell is approaching the vehicle and is moving towards the vehicle when he is a distance. The question is whether he could have stopped and moved, not whether he didn't necessarily have the unfettered right to keep going towards the vehicle. And the testimony, Your Honor, and there's no evidence to refute his testimony, is as soon as he saw the vehicle moving, he didn't keep moving forward. Plaintiff's counsel made the representation that he continued to move towards the vehicle. That is not consistent with the testimony in the record. As soon as the suspect vehicle began to move and as soon as Officer Campbell was able to recognize that it was accelerating towards him, that the vehicle was turning directly at him, he immediately started backpedaling. If you look at the scene photographs and at the diagrams which are contained in the record, the Sawyer's vehicle was backed into and perpendicular to the roadway. Nearby was another vehicle which was pulled in also perpendicular to the roadway. And the officer did not have a clear path. The question becomes whether it would be objectively reasonable for this officer under these circumstances to recognize or believe that he is in an imminent threat of death or serious bodily harm and whether or not there was case law sufficiently clear at the time that should have put him on notice that the use of deadly force under these circumstances would not be permitted. So here's a question for you. Our cases really come to very different conclusions relying on the pathway, distance, time, speed, and acceleration, but those would seem to be the main factors. When there's a new mix of factors, in your view, does that mean that the law isn't clearly established with respect to that specific set of factors? Yes, Your Honor. The Supreme Court has case law must leave no doubt that the use of deadly force under those circumstances would not be constitutionally permissible. If you change the factors. But Ms. Homan, I think every case, no case is going to be exactly the same. The vehicle is going to be going at a different speed. The distance is going to be different. We're always going to be dealing with the frame around the picture. Where does this one fit? And so if there's, if it can't be right, that every time there's not exactly a case on point, that there's not clearly established law that that just can't make sense because it's never going to be exactly the same. These are volatile situations. I don't disagree, Your Honor. I don't think there needs to be a case directly on point, but the case law must be sufficiently clear that the officer would know that under this specific set of facts, the use of deadly force would be constitutionally impermissible. Basically, what the case law said, when distilled down to its simplest form, is if the facts established that an officer can easily step out of the way, the use of deadly force is not objectively reasonable and the law is sufficiently clear that the officer should know that. But if the facts are such that a reasonable officer, based on the distance, based on the speed, based on the acceleration factor, could objectively believe, even if he's not standing directly dead center in the front bumper of the vehicle, that he is in imminent danger, then the case law does fall into the hazy borderland that Judge Settle found when he evaluated the case. Judge Settle didn't decide the first prong of the qualified immunity analysis because he didn't identify it, but indicated that there were likely questions of fact which would create an issue. So he went straight for the clearly established law and he relied on the plaintiff's version of the facts. I do need to correct one thing that Mr. Lobson said. He indicated that if you look at ER 1383 to ER 1388, that indicates the officer's position according to the plaintiff's expert. That is not what those diagrams indicate. Those diagrams indicate simply the trajectory of the bullets when they impacted the vehicle and are not intended to reflect how far from the vehicle Officer Campbell was when he fired the weapon. The evidence established, as rightly recognized by Judge Settle, that Campbell was five to ten feet off the bumper of the car. Even if you take plaintiff's acceleration factor at four to six miles an hour, that car can travel almost 17 feet in the time that it takes the officer, according to plaintiff's expert, to recognize the threat and make the decision to fire his weapon. The officer, according to plaintiff's expert, can discharge his weapon eight times in two seconds. But which diagram, in your view, most accurately represents what pathway was or was not available? Because again, the distance from the car and the time are only part of the picture. As counsel pointed out, if there's half a mile of clearance behind you, you need to turn tail and get out of the way. Your Honor, if you will look at ER 1535, this is a diagram that was created by plaintiff's expert, Trevor Newberry. Mr. Newberry's diagram reflects the placement of the Salyer's vehicle before it started to move and the placement of the pickup truck that was parallel to the Salyer's vehicle and perpendicular to the roadway. The cross-hatched rectangular area reflects the approximate location of where Officer Campbell was at the moment the car started to accelerate. Right. And what that suggests to me, though, looking at that, I have looked at that diagram, and the most obvious thought is he could scurry around behind the other vehicle where he'd have around the other vehicle as he was firing his weapon. If you look at the diagram... Well, they asked, but that's the question. If he could scurry around the other vehicle, what was the need for the objectively reasonable decision to fire at the same time? Because the car was right on top of him. Your Honor, that car by the time... And again, this is based on plaintiff's expert's opinions. In the time it took the officer to recognize that car was moving and presented an imminent threat, it had already closed the gap and was already on top of him. The wheels of the vehicle were turned in his direction. He is backpedaling as quickly as he can, and the car is accelerating. Could he have backpedaled faster if he weren't busy firing his weapon? Your Honor, the question is, is it of death or serious... Even though he can get behind another car that would protect him from being hit. What the court is suggesting is that the officer, in the less than one second it took for that car to close the distance and bear down on him, he should have recognized the speed of the vehicle, all of the adjacent... What is the word I look for? Impediments in the area, and decide that he could maybe get out of the way. No, he did. You're not... It's not just could. You told me that he did. That's exactly what... Got out of the way because he fired his weapon and ultimately killed Jacqueline Sawyers, which is what stopped the vehicle from accelerating. If you look at the path of the vehicle, which is diagrammed on 1540 and 1431 in the record, and the plaintiff's diagram and the defense diagram with respect to the arc that the vehicle followed is the same. He was in the path of that car until he got all the way past the back end of that truck. According to plaintiff's expert, the Sawyers vehicle moved a total of three seconds before the fatal shot was fired. Three seconds. That puts this case in the hazy borderland between reasonable and unreasonable force. This isn't a costa. This isn't a case where the officer could or should have recognized that he could easily step out of the way. This was a case where he had a split second to recognize that a car was bearing down on him and to make a decision as to whether or not to fire or not fire his weapon. So if I'm understanding your argument that if you, if we were to conclude that the officer in that period of time should have been able to determine that he could back out of the way, that would be the right thing that we would be utilizing the 2020 hindsight rule. Is that what you're saying? Yes, which is what plaintiff's experts were arguing. Their argument was based on the idea that the officer was never actually in danger. That's not the standard and it's not the test. As the district court correctly found, plaintiff submitted no evidence to contest Campbell's assertion that the vehicles accelerated and the wheels turned toward him while he was in a split second calculation. Does Monzon hurt or help you? I think Monzon does help. Yes, the speed in Monzon was much faster than in this case, but the difference between this case and Monzon is that the driver in Monzon was on pavement and got immediate traction and Ms. Salyers didn't. Yes, there was a high speed pursuit in Monzon that we don't have in this case, but that doesn't necessarily change the analysis because the high speed pursuit in Monzon was indicative of the fact that the driver was dangerous. In this case, they were attempting to capture Kenneth Wright. The officer's safety risks, the dangers were evident from the beginning. He was a wanted felon who had recently committed an armed robbery. So yes, the officers were faced with a high risk situation where the driver of the vehicle objectively took steps to flee the scene and in so doing turned the wheels of the car directly at a police officer and accelerated. Under this circuit's case law, the officer is entitled to qualified immunity under those circumstances. The district court was correct in so finding and we ask that you affirm. Thank you, counsel. You have some Thank you, Your Honor. Your Honor, you asked some questions about acceleration, so I wanted to come back to that for a moment. You'll find in excerpts of Rector 1541, the report of one of the plaintiff's experts, which was not rebutted, says that the Salyers vehicle was accelerating on their calculations at nine one hundredths of a G, that that is slower than normal, that normal acceleration is 15 one hundredths of a G. So if you and I are normally pulling away from a parking spot at 15 hundredths of a G, Ms. Salyers is pulling away slower than that. And I want to connect this to something that the Gonzales case emphasized. There's no reason why anybody has to, why the jury has to believe Officer Campbell when he says that the car suddenly accelerated toward him. And in Gonzales, the court said it doesn't make sense what the officer said. There were three factors, speed, distance and time. The officer gave his version of speed. He said the car was coming at him at 50 miles an hour. The car only went 50 feet in the Gonzales case. And he said it was rapidly accelerating toward him. And the court, this court held jury doesn't have to believe that it doesn't even square with the laws of physics. And the laws of physics here are even more in Salyers. In Gonzales, the car went 50 feet before the shooting. Here, the car went 13 feet before the shooting. Ms. Homan refers to the evidence in the record for thinning of wheels. It's not exactly correct. 1409 of the excerpts of record is a photograph of the dirt on the ground in front of the Sawyer Street house. It allegedly shows that some gravel has been displaced. That's what it allegedly shows. You look at it. I don't think it necessarily shows that at all. But even if it does show that, it doesn't tell us when that gravel was was moved. It tells us nothing at all about when this gravel allegedly moved on some wet because it had been raining. And I do think the photo shows that there's no reason why this jury couldn't decide from this evidence that Officer Campbell is lying through his teeth and that what he was trying to do was kill Kenneth Wright. And he just missed. He says he aimed for the for the driver. But if you look at those diagrams of the trajectory of the bullet from her expert, you will see that shots five, six and seven go right right through the passenger seat where Kenneth Wright is. He missed because Kenneth Wright ducked. But and I do agree with Miss Holman that their expert didn't say in those diagrams that he was three to six feet to the right. But I also they show that he was to the right. That's the trajectory that they show. And it's the plaintiff's expert that said he was three to six feet of the right. And that's a fact that must be taken as true. He was three to six feet to the right. That is the trajectory he shot right through where Mr. Wright's head would be if he hadn't ducked. And one of those shots hit Miss Sawyer's and killed her. Cars do not move directly at right angles sideways. They have to turn. If you're inside the turning arc, you cannot be hit. He was for all of his shots for all of them inside the turning arc and he could not be hit. I haven't really addressed it, Your Honors, but if you had to decide that Judge Settle was correct to dismiss this claim, I would still ask you to reinstate the claim for destruction of evidence and denial of due process because there was an overwhelming amount of evidence to show a conspiracy to cover up the fact. It's circumstantial, of course, because they're not admitting that they did it. But there's an overwhelming amount of evidence to suggest and our expert testified he believes there was an intentional deletion of video, which if we had it would tell us answers to a lot of these questions, like exactly where the cars were and exactly where Officer Campbell was. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate very much the helpful arguments from both of you. Yeah, I agree. Thank you.
judges: O'scannlain, Graber, Callahan